UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BURNELL MCLEOD,

                                       Petitioner,

        - against -

HAROLD GRAHAM,

                                       Respondent.
------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

10 Civ. 3778 (BMC)

**COGAN**, District Judge.

This matter is before the Court on petitioner, Burnell McLeod's, § 2254 petition for a writ of habeas corpus. For the reasons set forth below, the petition is denied and the case is dismissed.

## BACKGROUND

### I. The Events

In the early morning of June 14, 2002, petitioner and Frantz Joseph ("Joseph") approached a salon/tattoo parlor owned by Gary Foote ("Foote"), intending to rob it. Petitioner had previously worked at the salon as a tattoo artist and wanted to steal tattooing equipment to set up his own tattoo parlor. Foote was still present at the salon when they arrived. At gunpoint, petitioner and Joseph took Foote's van and salon keys and forced him into the front passenger side of his van, which was parked outside. Inside the van, Joseph took Foote's wallet and then drove for approximately thirty-five to forty-five minutes before stopping in a deserted area in Marine Park, Brooklyn. Joseph told Foote to get into the back of the van and when he did so, Foote kicked out a window and ran. Petitioner and Joseph proceeded to chase after him and

physically assault him. During the assault, Foote was shot in the face. Petitioner and Joseph fled the scene, leaving Foote lying on the ground bleeding. Foote later died as a result of the gunshot wound.

Thereafter, petitioner and Joseph returned to Foote's salon and used his keys to gain entry. They took expensive tattooing equipment and a cellular phone that had been left on the counter. Petitioner then left the stolen equipment with his brother and went to Kennedy Airport. The police traced calls made by petitioner from the stolen phone and apprehended him in Orlando, Florida. Petitioner admitted being in the van with Joseph on the night Foote was murdered, but denied harming Foote.

Petitioner was charged with two counts of Murder in the First Degree, four counts of Murder in the Second Degree, one count of Kidnapping in the First Degree, one count of Kidnapping in the Second Degree, two counts of Robbery in the First Degree, one count of Robbery in the Second Degree, one count of Burglary in the Third Degree, one count of Criminal Possession of a Weapon in the Second Degree, one count of Criminal Possession of a Weapon in the Third Degree, one count of Grand Larceny in the Fourth Degree, one count of Criminal Possession of Stolen Property in the Fourth Degree, one count of Criminal Possession of Stolen Property in the Fifth Degree, and one count of Petit Larceny.

## II.  The Underlying Proceedings

The prosecution's evidence at trial consisted of, *inter alia*, testimony of police officers who were called to the scene of the murder, including the officer who discovered Foote's body. The statement petitioner gave to the police after he was arrested in Florida was also read into evidence. The charges at trial consisted of two counts of Second Degree Murder (one count Felony Murder predicated on Robbery and another Felony Murder predicated on Kidnapping),

Robbery in the Second Degree, Burglary in the Third Degree, Kidnapping in the Second Degree, and Possession of Stolen Property in the Fourth and Fifth Degrees.[1] The jury was instructed that only if they chose to acquit petitioner of Felony Murder based on Robbery, should they determine his guilt for Felony Murder based on Kidnapping.[2]

On March 23, 2005, the jury found petitioner guilty of Felony Murder predicated on Kidnapping, Possession of Stolen Property in the Fifth Degree, and Burglary in the Third Degree. The jury acquitted him of Felony Murder predicated on Robbery and Possession of Stolen Property in the Fourth Degree. The court sentenced petitioner to consecutive terms of twenty-five years to life for the murder and two to four years for the burglary convictions, as well as a concurrent one year term for Possession of Stolen Property.

On appeal, petitioner raised one claim – that the court should dismiss the felony murder count because the kidnapping charge on which it was based merged with the robbery charges for which petitioner was acquitted. Petitioner argued, in the alternative, that if the court should find his claim unpreserved, it should find his counsel ineffective for failing to properly preserve the issue. The Appellate Division, Second Department, denied his appeal, holding that his merger claim was unpreserved for appellate review, and also that it lacked merit because the "abduction of the victim at gunpoint constituted the discrete crime of kidnapping in the second degree." People v. McLeod, 50 A.D.3d 826, 856 N.Y.S.2d 164 (2d Dep't 2008). The court explained that because the robbery could have been achieved without detaining Foote, the two acts were

---

[1] In response to Petitioner's omnibus motion, the trial court dismissed the first degree murder charges. At the charging conference, the prosecution moved to dismiss several other counts including: two of the four Second Degree Murder counts (depraved indifference murder and intentional murder), Criminal Possession of a Weapon, and Petit Larceny.

[2] The jury was also instructed that if they chose to convict petitioner of either of the felony murder charges, they would not need to consider his guilt for the underlying robbery and kidnapping charges because doing so would be duplicative or irrelevant.

3

divisible and so "the merger doctrine was inapplicable."[3] Id. The Court of Appeals subsequently denied leave to appeal. People v. McLeod, 10 N.Y.3d 867, 860 N.Y.S.2d 493 (2008).

Thereafter, petitioner filed a motion pursuant to N.Y. CRIM. PROC. LAW § 440.10 ("440 Motion") to vacate the judgment. In his motion, petitioner asserted two claims. First, he argued that he was denied his federal and state constitutional and statutory rights to a fair trial because the trial court had failed to administer the truthfulness oath to prospective jurors and the impartiality oath to the selected jury. Second, petitioner argued that his trial counsel was ineffective for failing to object to these errors. The Supreme Court, Kings County, denied his motion, holding that his claims were procedurally barred because he failed to raise them on direct appeal, and also without merit because the record explicitly indicated that both oaths had properly been administered. Because his claims were without merit, the court also found that he had no grounds to claim ineffective assistance of counsel. The Appellate Division, Second Department denied petitioner's motion for leave to appeal.

In his habeas petition, petitioner asserts the same claims he raised on direct appeal and in his 440 Motion. He alleges that: (1) his conviction should be reversed because the kidnapping merged with the robbery; and (2) he was denied his constitutional and statutory right to a fair trial because the trial court failed to administer the truthfulness oath to prospective jurors prior to questioning. Having raised these claims in state court, all of petitioner's claims have been properly exhausted. See 28 U.S.C. § 2254(b)(1)(A). Nonetheless, this Court is barred from reviewing his claims. Both of petitioner's claims are not cognizable for federal review and his fair trial claim is also subject to an independent and adequate state procedural bar.

---

[3] Though not explicitly stated in the record, the robbery referred to as the predicate for felony murder is the taking of Foote's wallet, not the later robbery of his salon. The court made this clear by stating that "the confinement in this case continued past the completion of the acts underlying the robbery charge." Id.

4

## DISCUSSION

### I. State Procedural Bar

"It is now axiomatic that in 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991)). The disposition of a claim on a state procedural ground must be clearly asserted by the state court for a federal district court to find the claim procedurally barred. See Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038, 1044-45 (1989). The fact that the state court also finds a claim to be without merit does not create an opening for federal review. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("even when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted") (internal citations omitted); see also Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007).

#### A. Fair Trial Claim

The Supreme Court, Kings County, denied petitioner's 440 Motion pursuant to N.Y. CRIM. PROC. § 440.10(2)(c), which explicitly states that 440 Motions must be denied when "[a]lthough sufficient facts appear on the record . . . no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." The court found that petitioner's motion was based entirely on facts available to petitioner in the trial record, yet he had failed to raise the issue on direct appeal. Therefore, petitioner's 440 Motion failed under § 440.10(2)(c). The Second Circuit has repeatedly recognized § 440.10(2)(c) to be an independent and adequate bar to federal habeas

review. See, e.g., Clark v. Perez, 510 F.3d 382, 390-91 (2d Cir. 2008); Jimenez v. Walker, 458 F.3d 130, 148-49 (2d Cir. 2006); Sweet v. Bennett, 323 F.3d 135, 139-40 (2d Cir. 2003).

A petitioner may overcome a procedural default by showing cause and prejudice or by proving actual innocence on the record. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001); Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998). Petitioner has made no claims of actual innocence, nor does the evidence support such a finding. The possibility of petitioner defeating the procedural default thus depends on a showing of cause and prejudice. Cause is established if either; (1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel. See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), (citing Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)) (internal citations omitted). To show prejudice, a petitioner must show that errors at his trial "worked to his *actual* and substantial disadvantage. . . . ." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1980) (emphasis in original); see also Mallard v. United States, No. 98-cv-7507, 2009 WL 1873665, at *2 (E.D.N.Y. June 29, 2009). Liberally construing his petition, the only cause this Court can envision for his default is that his trial counsel's failure to preserve the claim amounted to ineffective assistance of counsel.

Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), counsel is ineffective if his or her actions were objectively unreasonable and there is a reasonable probability that but for counsel's errors the fact-finder would have possessed reasonable doubt as to petitioner's guilt. The same standard applies when determining ineffective assistance of counsel as cause for a procedural default because "ineffective assistance adequate to establish

6

cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) (emphasis in original); see also Murray, 477 U.S. at 488 (1986); Aparicio, 269 F.3d at 91.

Applying the Strickland test, petitioner's trial counsel's alleged error does not rise to the level of ineffective assistance of counsel. First, counsel had no reason to object to the voir dire proceedings because nothing in the record suggests that the potential jurors were improperly sworn-in. Moreover, the Supreme Court found the claim to be meritless. Therefore, there is not a reasonable probability that but for counsel's failure reasonable doubt of petitioner's guilt would have existed. For this reason, failure to raise a meritless argument does not constitute ineffective assistance of counsel. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Aparicio, 269 F.3d at 99.

Where, as here, a petitioner cannot prevail on the merits of his claims, he cannot overcome a procedural bar by claiming ineffective assistance of counsel. Aparicio, 269 F.3d at 99 n.10; Larrea v. Bennett, 368 F.3d 179, 182 (2d Cir. 2004). Accordingly, petitioner's fair trial claim is procedurally barred from federal review.

### B. Merger Claim

In its decision affirming petitioner's conviction, the Appellate Division found that his merger argument was unpreserved for appellate review under New York's contemporaneous objection rule. N.Y. CRIM. PROC. § 470.05(2). The Second Circuit has recognized § 470.05(2) to be an independent and adequate procedural bar. Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). See also Rodriguez v. Schriver, 392 F.3d 505, 512 (2d Cir. 2004). This Court would, therefore, be barred from reviewing petitioner's merger claim under the procedural default

doctrine. However, after reviewing the record, I find that petitioner did raise the issue in a timely fashion.

Prior to the commencement of his trial, petitioner made an omnibus motion to dismiss his indictment,[4] asserting, *inter alia*, his merger claim defense. The court held that the merger doctrine was inapplicable to petitioner's case. Petitioner then failed to raise the claim again at any point until his direct appeal. On appeal, petitioner argued that his pre-trial motion was sufficient to preserve the argument for appellate review. Petitioner relied on People v. Mezon, 80 N.Y.2d 155, 161, 589 N.Y.S.2d 838, 841 (1992) ("The law does not require litigants to make repeated pointless protests after the court has made its position clear."), and People v. Pugh, 258 A.D.2d 674, 868 N.Y.S.2d 764 (2d Dept. 1999) (after an unequivocal ruling an additional request would be futile).

Under N.Y. CRIM. PROC. § 470.05(2), an issue is sufficiently preserved when "a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction." In his pre-trial motion, petitioner expressly requested that the charge against him for felony murder predicated on kidnapping be dismissed pursuant to the merger doctrine. A pre-trial motion is sufficient to preserve the issue for appellate review under New York law. See People v. Booker, 63 A.D.3d 750, 880 N.Y.S.2d 343 (2d Dep't 2009) (failure to make a pre-trial motion to dismiss the indictment rendered defendant's claim unpreserved for appellate review); People v. Blake, 139 A.D.2d 110, 116, 530 N.Y.S.2d 578, 581 (1st Dep't 1988) ("defendant's pre-trial motion . . . was sufficient to preserve this issue for appellate review"). As petitioner argued, it would be futile for him to have re-raised the same issue during trial. Once the trial court has expressly ruled on an issue following a party's objection or request for ruling, the issue is preserved. See People v. Edwards, 95 N.Y.2d 486, 719 N.Y.S.2d 202 (2000).

---

[4] N.Y. CRIM. PROC. §§ 210.20(1)(a), 210.25.

8

Because petitioner appears to have complied with New York's contemporaneous objection rule, the Appellate Division's determination that his merger claim was unpreserved is inadequate to bar federal review. In Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002), the Supreme Court held that a procedural default is overcome when "exorbitant application of a generally sound rule renders the state ground inadequate." The Court laid out three factors for determining whether a case falls into the "limited category" of such cases; (1) whether the alleged violation was actually relied on by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicates that compliance with the rule was demanded in the present situation; and (3) whether petitioner substantially complied with the rule, taking into consideration whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Id. at 376, 381-85, 122 S. Ct. at 886, 888-90; Cotto v. Herbert, 331 F.3d 217, 241 (2003).

Applying the Lee/Cotto factors, petitioner's merger claim overcomes the argument of procedural default. The trial court did not, nor could it have, relied on petitioner's procedural error in denying the claim because petitioner committed no error. Thus, the first factor favors petitioner. Second, as previously stated, New York case law does not require a second objection once a trial court has expressly ruled on an issue, so such compliance was not demanded. Thus the second factor also favors petitioner. Third, petitioner's pre-trial motion sufficiently complied with New York's contemporaneous objection rule, serving the legitimate government interest of adequately appraising the trial court of his claim. See Cotto, 331 F.3d at 245, 247. With all the factors in petitioners favor, the conclusion is inevitable that petitioner's merger claim is not subject to a procedural bar from federal review.[5]

---

[5] See also Ojar v. Greene, No. 07-cv-3674, 2008 WL 428014, at *8-9 (E.D.N.Y Feb. 15, 2008); Battee v. Phillips, No. 04-cv-04334, 2010 WL 2026443, at *9 (E.D.N.Y. May 20, 2010).

9

While petitioner's merger claim is not barred from review on procedural default grounds, it is precluded from federal review for not being a federally cognizable claim. This Court, therefore, may not reach the merits of the claim.

## II. Federally Cognizable Claims

Federal habeas corpus relief is not available for violations of state law. See 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"); see also Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); Mackenzie v. Portuondo, 208 F. Supp. 2d 302, 322 (E.D.N.Y. 2002).

Misapplication of the merger doctrine is not a violation of federal law because it is a state law judicial construct. See Smith v. Lempke, No. 08-CV-6065, 2010 WL 2629794, at *13 (W.D.N.Y. June 28, 2010) ("The merger doctrine was developed by New York state courts and is a doctrine of state law. Such a violation does not present a cognizable claim in a habeas proceeding."); Smith v. West, 640 F. Supp. 2d 222, 234 n.3 (W.D.N.Y. 2009) (noting that the merger doctrine is a judicially-created doctrine in New York State); Dinsio v. Donnelly, 9:03-CV-0779, 2007 WL 4029221, at *15 (N.D.N.Y. Nov. 15, 2007) ("interpretation and application of the merger doctrine is purely a claim under New York State law"); Mackenzie, 208 F. Supp. 2d at 322 (petitioner's state law merger doctrine claim not cognizable on habeas review). Accordingly, petitioner's merger claim cannot be reviewed by this Court.

Additionally, even if petitioner's fair trial claim was not procedurally barred, this Court could not review it because it is also not federally cognizable. The jury truthfulness oath is an

10

aspect of voir dire, which is solely a state issue.[6] New York law provides that prospective jurors will be "immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors." N.Y.C.P.L. § 270.15(1)(a). Habeas claims based on alleged violations of § 270.15(1)(a) are not federally cognizable. See Gaskin v. Graham, No. 08-CV-1124, 2009 WL 5214498, at *27 n.9 (W.D.N.Y. Dec. 30, 2009); McCrary v. Artuz, No. 95-CV-622, 1995 WL 728423, at*4 (E.D.N.Y. Nov. 28, 1995).

## CONCLUSION

For the reasons set forth above, the petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability shall not issue. See 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
December 8, 2010

---

[6] In his 440 Motion, petitioner claimed his "Right to a Fair Trial" was violated, citing the Sixth and Fourteenth Amendments to the U.S. Constitution. In his habeas petition, petitioner stated his Equal Protection and Due Process rights were violated. The Court notes that regardless of his choice of phrasing, the essence of petitioner's claim is that there was an error in the jury selection at his trial. State law controls jury proceedings and thus alleged violations are only reviewable in state court.